# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

|  |  |  |
|---|---|---|
| OPTIMUM IMAGING TECHNOLOGIES LLC, | § § § | |
| *Plaintiff,* | § § | Civil Action No. 4:23-cv-923 Judge Mazzant |
| v. | § § | |
| NIKON CORPORATION, | § § | |
| *Defendant.* | § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Nikon Corporation's Motion to Transfer Venue Pursuant to 28 U.S.C. 1404(a) (Dkt. #23). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

On October 18, 2023, Plaintiff filed a Complaint in six patent infringement cases[1] alleging that Defendant infringed U.S. Patent Nos. 7,612,805 ("the '805 Patent"); 8,451,339 ("the '339 Patent"); and 10,873,685 ("the '685 Patent"); and 10,877,266 ("the '266 Patent") (collectively, the "Asserted Patents") (Dkt. #1 at ¶ 10). The Asserted Patents generally relate to "digital imaging systems and methods, namely in-camera systems for filtering and correcting image aberrations or distortions" (Dkt. #1 at ¶ 12). Plaintiff's Complaint alleges that Defendant infringed on the Asserted Patents at least by importing, selling, and offering for sale "Nikon digital cameras

---

[1] These cases are *Optimum Imaging Techs. LLC v. FUJIFILM Corp.*, No. 4:23-cv-922 (E.D. Tex. Oct. 18, 2023); *Optimum Imaging Techs. LLC v. Nikon Corp.*, No. 4:23-cv-923 (E.D. Tex. Oct. 18, 2023); *Optimum Imaging Techs. LLC v. Olympus Corp., et al.*, No. 4:23-cv-924 (E.D. Tex. Oct. 18, 2023); *Optimum Imaging Techs. LLC v. Panasonic Corp., et al.*, No. 4:23-cv-926 (E.D. Tex. Oct. 18, 2023); *Optimum Imaging Techs. LLC v. Samsung Electronics Co., Ltd.*, No. 4:23-cv-927 (E.D. Tex. Oct. 18, 2023); and *Optimum Imaging Techs. LLC v. Sony Corp.*, No. 4:23-cv-928 (E.D. Tex. Oct. 18, 2023).

that include digital lens aberrations or distortions" (Dkt. #1 at ¶ 18). Two of the defendants moved to dismiss the Complaint, asserting that are not proper parties to Plaintiff's claims and that this Court lacks jurisdiction over them. *See Optimum Imaging Techs. LLC v. Panasonic Corp., et al.*, No. 4:23-cv-926, ECF. No. 26 (E.D. Tex. Oct. 18, 2023); *Optimum Imaging Techs. LLC v. Panasonic Corp., et al.*, No. 4:23-cv-926, ECF. No. 17 (E.D. Tex. Oct. 18, 2023). Affiliates of those two defendants then filed declaratory judgment actions against Plaintiff in the Northern District of California ("NDCA").

On August 29, 2024, Defendant filed its Motion to Transfer Under § 1404(a) (Dkt. #23), claiming that NDCA is a more convenient venue to litigate this case than this district because Defendant, a Japanese corporation, has no witnesses or documents in this district, Plaintiff lacks any non-litigation ties to this district, and the Asserted Patents' sole named inventor resides in NDCA (Dkt. #23 at p. 5). On September 19, 2024, Plaintiff filed its Response (Dkt. #33), arguing that Defendant did not meet its burden to show that NDCA is a clearly more convenient forum than this district (Dkt. #33 at p. 4). On September 30, 2024, Defendant filed its Reply (Dkt. #26). On October 3, 2024, Plaintiff filed its Sur-Reply (Dkt. #40). The Motion is ripe for adjudication.

## LEGAL STANDARD

Section 1404 permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to 'an individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The purpose of § 1404 "is to

prevent the waste 'of time, energy and money' and 'to protect the litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" *Van Dusen*, 376 U.S. at 616 (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 27 (1960)).

In a patent case, a motion to transfer under 28 U.S.C. § 1404(a) is governed by the law of the regional circuit, in this case the Fifth Circuit. *In re TS Tech U.S. Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties consent to a particular jurisdiction. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold inquiry is met, the Fifth Circuit has held that the determination of convenience turns on eight factors, where "[n]o factor is of dispositive weight." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023).

The four private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

The four public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are neither exhaustive nor exclusive. *Id.*

The party seeking transfer of venue must show good cause for the transfer. *Id.* The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Id.*; *TikTok*, 85 F.4th at 358. The plaintiff's choice of venue is generally not a factor in this analysis, but rather contributes to the defendant's burden to show good cause for the transfer. *Volkswagen II*, 545 F.3d at 315 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315. And while the multi-factor analysis is informative, ultimately, "the district court has broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)). "[A] district court abuses its discretion by denying transfer when 'not a single relevant factor favors the [plaintiff's] chosen venue.'" *TikTok*, 85 F.4th at 358 (quoting *Volkswagen II*, 545 F.3d at 318). A district court also "abuses its discretion by denying a motion to transfer when 'virtually all of the events and witnesses regarding the case . . . are in the transferee forum.'" *Id.* at 366 (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013)).

## ANALYSIS

The threshold inquiry on a § 1404(a) motion to transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d 201 at 203. "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Here, the

Court finds that venue would have been proper in NDCA because Defendant, a Japanese corporation, is subject to venue in any judicial district in the United States. *In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018).

The Court's decision to deny Defendant's motion turns on a multi-factor transfer analysis. After reviewing each factor, the Court has determined that two factors disfavor transfer, two favor transfer, and the remaining factors are neutral. The Court is apprised of this circuit's approach to avoid a mere tallying of the factors in resolving this dispute. *See In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013) ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology."); *see also SQIP, LLC v. Cambria Co., LLC*, No. 4:23-CV-202-SDJ, 2024 WL 1346498, at *2 (E.D. Tex. Mar. 29, 2024) ("[C]ourts are not to merely tally the factors on each side."). To that end, the Court considered not only each factor's outcome but also its weight to determine whether the actual convenience of NDCA as a forum is "clearly more convenient" than that of this district. *In re Chamber of Commerce of United States*, 105 F.4th 297, 310 (5th Cir. 2024) (quoting *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024)) (establishing that a venue is "clearly more convenient" when "the marginal gain in convenience will be significant" and "evidence makes it plainly obvious . . . that those marginal gains will actually materialize in the transferee venue."). The Court's determination is that transferring this case to NDCA would yield minor gains at best, not the *significant* gains needed to warrant transfer. *See id.* Thus, the Court finds that the motion should be **DENIED** for the reasons below.

## I.    The Private Interest Factors

### A.    The "relative ease of access to sources of proof" factor is neutral.

This factor considers "the relative access to sources of evidence in the two competing forums." *Juniper Networks*, 14 F.4th at 1321 (Fed. Cir. 2021). In considering the relative ease of access to sources of evidence, a court looks to determine where evidence, such as documents and physical evidence, is stored. *Volkswagen II*, 545 F.3d at 316.

Defendant argues that this factor favors transfer because the Accused Products were not designed or developed in Texas, and most technical documents relevant to this case were created in and remain accessible from its offices in Japan (Dkt. #23 at p. 12). Additionally, to the extent that the Asserted Patents' single named inventor, Mr. Solomon, has documents relevant to this case, it would be less burdensome to transmit them to NDCA, where he resides, than this district.

Plaintiff, by contrast, contends that this factor is neutral. Although relevant documents are stored in Japan, which is *physically* closer to NDCA, Plaintiff claims that it is only slightly more inconvenient to transport evidence from Japan to Texas than to California, giving negligible weight to this factor (Dkt. #33 at p. 9) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009)) ("because the documents housed in Europe and Washington, D.C. will need to be transported in any event, it is only slightly more inconvenient or costly to require the transportation of those materials to California than Texas"). Because source code can be reviewed only by bringing "far-flung individuals" from Japan into the United States, accessing that code is equally as difficult in NDCA as it would be in this district. *See TikTok*, 85 F.4th at 359. And, to the extent Mr. Solomon has physical documents, they are held in Austin, Texas, not in NDCA.[2]

---

[2] The Court notes that Austin is outside of this district.

This factor is neutral. It appears that most of the evidence relevant to this case will come from either Defendant in Japan or Mr. Solomon.[3] But "the bulk of the evidence comes from the *accused infringer*" in a patent case, not the inventor. *See Genentech*, 566 F.3d at 1345 (emphasis added) (citations omitted). Thus, the Court will weigh the location of the infringer's evidence more heavily in its analysis. Given that Defendant is headquartered in Japan and that the Accused Products "are designed by Nikon in Japan and are manufactured there," the Court suspects that the bulk of evidence will come from Japan—a forum across the Pacific Ocean from both NDCA and this district (Dkt. #23 at p. 8). A tremendous distance separates Japan from either forum; concluding that one venue is significantly more convenient than the other would necessarily entail an arbitrary drawing of geographical lines. That, the Court will not do.

Regardless of where sources of proof are located, they must either be electronic or physical. In this case, the evidence will likely consist of both because the Asserted Patents broadly teach "in-camera systems for filtering and correcting image aberrations or distortions"—a process whereby camera software and hardware interact to correct distortion (Dkt. #1 at ¶12; *see* '805 Patent, Fig. 1 (depicting a microprocessor configured to perform software-enabled corrective functions, and a physical camera lens)). Electronic evidence is as equally accessible in this district as it is in NDCA. Barring minute differences in latency and congestion—performance metrics irrelevant to either party's arguments—there is no apparent disparity between the parties on this point. To the extent physical evidence exists, it is held in Austin, Texas, which is closer to this district than NDCA,

---

[3] The Court is unpersuaded by Defendant's contention that relevant third-party evidence may also come from Messrs. Sachs and Scheer, attorneys who are, at best, tangentially related to the Asserted Patents (Dkt. #23 at pp. 6–7). As Plaintiff points out, Mr. Sachs withdrew his name from USPTO records regarding the '805 Patent in September 2009 and did not file any documents with the USPTO on Mr. Solomon's behalf (Dkt. #33 at p. 11). And Mr. Scheer did not work for Mr. Solomon until years after the Asserted Patents issued (Dkt. #33 at p. 11). Consequently, neither attorney is likely to have unique access to, or be a unique source of, relevant evidence.

albeit outside of this district. The Court is in no position to determine what proportion of relevant documents in this case will be physical as opposed to electronic. Thus, the Court finds that this factor is neutral in the overall analysis.

## B.    The "availability of compulsory process to secure witness attendance" factor is neutral.

This factor favors transfer when most of the non-party witnesses are within the subpoena power of the transferee venue. *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *4 (Fed. Cir. 2021). Courts must consider all potential witnesses who have relevant and material information, without attempting to evaluate the importance of their testimony or the likelihood that they will testify. *Genentech*, 566 F.3d at 1343.

Defendant asserts that Mr. Solomon has information relevant to the merits of this case (Dkt. #23 at p. 14). Defendant also notes that Mr. Solomon resides in Oakland, California, which is within NDCA's statewide subpoena power and within 100 miles of the NDCA court (Dkt. #23 at p. 15). To the extent Mr. Solomon can be considered a third-party prior art witness, then, Defendant contends that this factor favors transfer (Dkt. #23 at p. 15).[4] Plaintiff retorts that Mr. Solomon, as the sole member of the company that is Plaintiff, cannot be a third-party witness (Dkt.

---

[4] Defendant argues that this factor weighs further in favor of transfer because Messrs. Sachs and Scheer "appear to reside in NDCA" and, therefore, fall within NDCA's subpoena power (Dkt. #23 at p. 15). For the reasons stated above, the Court will not allow them to heavily tip the scales one way or another. *See, supra* note 4, at 7. Relatedly, Defendant claims that the Court cannot "evaluate the significance" of Mr. Sachs' involvement in the Asserted Patents' prosecution when evaluating this factor, but the sentence preceding Defendant's quoted excerpt shows that Defendant has stretched the law too thin on that point. Indeed, "[a] district court *should assess the relevance and materiality of the information* the witness may provide." *Genentech*, 566 F.3d 1338 at 1343 (emphasis added). Here, the relevance of Mr. Sachs' testimony is unclear because he only "answered minor questions" for Mr. Solomon in early prosecution, and he did not file any documents with the USPTO on Mr. Solomon's behalf (Dkt. #33 at p. 11). The Court cannot surmise the nature of the questions Mr. Sachs answered. Therefore, his involvement will not weigh heavily in the analysis.

#3 at p. 10) (citing *Ganas, LLC v. Dell, Inc.*, No. 2:12-cv-324-JRG-RSP, 2013 WL 12145058, at \*6

(E.D. Tex. Aug. 27, 2013)). Thus, Plaintiff argues that Mr. Solomon should not affect this factor.

      This factor is neutral. Recognizing a limitation in its argument, Defendant asserted that "*to*

*the extent Mr. Solomon is a considered a third party*", his residence in NDCA favors transfer" (Dkt.

#23 at p. 15) (emphasis added). Yet, Defendant offers no caselaw (nor is the Court aware of any)

supporting the proposition that Mr. Solomon is a third-party witness distinct from Plaintiff, a party

to this lawsuit with no members other than Mr. Solomon (Dkt. #23 at p. 15). Such a position would

make little practical sense in this case: even if Mr. Solomon refused to testify, NDCA could

exercise its subpoena power to compel Plaintiff to testify, who can speak only through Mr.

Solomon. The "extent" to which "Mr. Solomon is considered a third party," then, is none at all.

*See Ganas*, 2013 WL 12145058, at \*3 (distinguishing between an LLC's sole member as a party

witness and a true third party as the "only [] non-party witness"). As a result, the Court finds this

factor to be neutral.

    **C.**    **The "cost of attendance for willing witnesses" factor slightly favors transfer.**

      This factor compares the total time a witness would have to travel to attend trial in each

proposed forum. *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at \*4 (Fed. Cir. 2021)

("*Google I*"). It is "the single most important factor in transfer analysis." *Juniper Networks*,

14 F.4th at 1318 (quoting *Genentech*, 566 F.3d at 1343). "When the distance between an existing

venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor

of inconvenience to witnesses increases in direct relationship to the additional distance to be

traveled." *Volkswagen I*, 371 F.3d at 204–05. However, the "100-mile rule" should not be applied

rigidly, particularly when witnesses "will be required to travel a significant distance no matter

where they testify." *Genentech*, 566 F.3d at 1344.

Defendant asserts that NDCA is more convenient than this district because flights from Tokyo, Japan are shorter, more frequent, and nonstop when compared to those for Dallas, which would still require further travel to reach this district (Dkt. #23 at p. 13). NDCA is also more convenient for Mr. Solomon, who resides there. Given that Defendant's witnesses and Mr. Solomon live in NDCA, whereas no witness resides in this district, Defendant contends that this factor strongly favors transfer.

Plaintiff argues that Defendant cannot meet its burden as to this factor with vague, general appeals to witnesses in Japan without describing what their testimony would entail, even if only generally (Dkt. #33 at p. 12) (quoting *Welch v. Capital One Bank USA, N.A.*, 2022 U.S. Dist. LEXIS 249763, *25 (E.D. Tex. Sep. 13, 2022)) ("Vague statements about the convenience of unknown and unnamed witnesses are insufficient to convince the Court that the convenience of the witnesses would be best served transferring venue."). Plaintiff further cautions the Court against focusing exclusively on travel distance, as in Plaintiff's view, the 100-mile rule uses travel distance as a *proxy* for total travel costs (Dkt. #33 at pp. 12–13) (quoting *Welch*, 2022 U.S. Dist. LEXIS 249763, at *25) (incorporating into the convenience analysis factors such as travel time, meal and lodging expenses, overnight stays, and absence from regular employment).

Defendant contends that Plaintiff's critique regarding witness specificity is of no moment because it identified Mr. Solomon in NDCA, and "*all* of [Defendant's] relevant technical employees are in Japan" (Dkt. #34 at p. 6). By contrast, no witnesses reside in this district.

This factor favors transfer, but only slightly. Witnesses in this case fall into one of two categories: they are either Mr. Solomon, who resides in NDCA, or Defendant's employees residing in Japan. Regardless of this Court's interpretation of factors to consider in evaluating convenience

(i.e., whether strictly distance or a more holistic convenience analysis), NDCA is more convenient for Mr. Solomon.[5]  As for the witnesses in Japan, however, the Court finds that, whether trial is held in Texas or in California, the distance traveled and accommodations required are so great as to render each venue equally as inconvenient as the other. In such a case, the 100-mile rule does not clearly favor one venue. *See Google I*, 2021 WL 4427899, at *4 (rejecting a "'rigid[]' application of the rule when 'witnesses . . . will be required to travel a significant distance no matter where they testify' and when all witnesses would be inconvenienced by having to leave home to attend trial."); *In re Apple Inc.*, 979 F.3d 1332, 1341 (Fed. Cir. 2020) (abandoning a strict application of the 100-mile rule because "regardless of the ultimately chosen venue, such witnesses will be required to travel a significant distance, will likely incur meal and lodging expenses, and will likely incur time away from home.").

Moreover, the parties' arguments regarding which costs to consider in this factor are unpersuasive because they paint different, incomplete pictures of the witnesses' total inconvenience (*See* Dkt. #23 at pp. 12–13; Dkt. #33 at pp. 12–13). For each additional cost imposed by one venue onto the witnesses from Japan, there is arguably a corresponding cost they would no longer have to pay in the other venue. Accordingly, the Court has no convincing basis on which it should differentiate between one multi-day, transcontinental commitment and another. Thus, the witnesses from Japan have a neutral effect on this factor, but Mr. Solomon's residence in NDCA slightly favors transfer. Overall, this factor therefore weighs slightly in favor of transfer.

---

[5] Defendant also claims that this factor would favor transfer even if Mr. Solomon were willing to travel to Texas for trial (Dkt. #23 at p. 14). Because Plaintiff did not raise that argument in its briefing, the Court will not analyze the effect Mr. Solomon's willingness would have had on this factor.

> D.  **The "all other practical problems that make trial of a case expeditious" factor weighs against transfer.**

"The fourth private interest factor addresses concerns rationally based on judicial economy." *Farmobile LLC v. Farmers Edge Inc.*, No. 2:21-cv-411, 2022 WL 2653893, at *5 (E.D. Tex. July 7, 2022). "Motions to transfer venue are to be decided based on 'the situation which existed when the suit was instituted.'" *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)).

Defendant contends that "[t]here are no practical problems with transfer"[6] (Dkt. #23 at p. 15). At the time this suit was filed, this Court had not substantively reviewed the Asserted Patents or issued a claim construction. In response to Plaintiff's simultaneous filing of multiple lawsuits in this district alleging infringement of the same patents, Defendant argues that the Court should afford those co-pending suits little weight for three reasons. First, the NDCA declaratory judgment actions are likely to remain in NDCA and would be more efficient to hear there. Second, to the extent this the other cases are transferred to NDCA, this case should be transferred as well, given that they are "closely related to the Nikon case asserting the same Asserted Patents, accusing similar camera products, and involving the same technologies" (Dkt. #23 at p. 16). Third, this case is in its early stages, and the efficiency rationale does not apply where a different judge—here, Judge Gilstrap—heard the related case (Dkt. #23 at p. 17) (citing *Droplets, Inc. v. E*TRADE Fin. Corp.*, 2012 WL 13390146, at *2 (E.D. Tex. Mar. 8, 2012)).

Plaintiff argues that this factor weighs against transfer because doing so would reduce judicial economy. The judge overseeing one of the NDCA declaratory judgment actions has

---

[6] There is some ambiguity as to whether "no [] problems" means that Defendant believes this factor affirmatively weighs in favor of transfer or is neutral. In any case, the Court will consider Defendant's arguments and draw an independent conclusion.

already issued a tentative order transferring the case to this district (Dkt. #33-2 at p. 2) ("Tentative Order: This case is identical in terms of issues, facts, and parties to the one filed in the Eastern District of Texas . . . it is in the interest of justice and efficiency for the Eastern District of Texas to decide this case along with the other cases involving the exact same patents"). The other declaratory action is assigned to a different judge; transferring this case to NDCA, then, would lower judicial economy by splitting related cases between two judges as opposed consolidating them before a single judge in this district. Plaintiff also contends that key factual differences between this case and *Droplets* warrant a distinction. In *Droplets*, the Court's previous experience was limited to the prior judges' personal interactions with the parties, whereas here, Judge Gilstrap has already construed two terms on which the Court can rely to improve judicial economy (Dkt. #33 at p. 9). *See Droplets*, 2012 WL 13390146, at *2.

This factor weighs against transfer. The substantive issues presented in this case and related cases are so similar that splitting them between multiple courts, let alone multiple judges, would significantly diminish judicial economy. Indeed, Defendant tacitly admits as much (Dkt. #23 at p. 16) ("The other cases are closely related to the Nikon case asserting the same Asserted Patents, accusing similar camera products, and involving the same technologies. Thus, all the related cases should be considered together for transfer purposes, not just this case against Nikon in isolation."). It would appear, then, that at least one of these cases is not likely to remain in NDCA as Defendant claims. And if these cases are to be consolidated in a single district, the better path to promoting judicial economy would be to keep them in a district with related, co-pending

cases, particularly where at least one of them does not have a pending motion to transfer.[7] Further, the Court agrees with Plaintiff that Defendant's reliance on *Droplets* neglects that a claim construction order pertinent to the Asserted Patents had not already issued in the prior case (Dkt. #33 at pp. 8–9). *Droplets,* 2012 WL 13390146, at *2 (E.D. Tex. Mar. 8, 2012) ("The case settled before the Court issued a claim construction order."). Despite the distinction, the Court will not weigh Judge Gilstrap's claim construction order on two terms heavily in its analysis, as it represents only a small fraction of the work either this Court or NDCA would necessarily undertake to adjudicate these claims. Still, the Court is unpersuaded by Defendant's arguments that transferring the case would promote judicial economy. As a result, the Court finds that this factor disfavors transfer.

## II.    The Public Interest Factors

### A.    "Administrative difficulties flowing from court congestion" slightly disfavors transfer.

This factor considers "the administrative difficulties flowing from court congestion." *TikTok, Inc.*, 85 F.4th 352 at 363 (5th Cir. 2023) (quoting *Volkswagen II*, 545 F.3d at 315). It considers "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 Fed. App'x 929, 932 (Fed. Cir. 2020). It "normally weighs against transfer when the 'case appears to be timely proceeding to trial before the' transferee [sic] district." *Id.* Time-to-trial differences, however, should not "weigh [this factor] against transfer when the plaintiff 'is not engaged in product competition in the marketplace and is not threatened

---

[7] *See, e.g., Optimum Imag. Techs. LLC v. Panasonic Corp., et al.*, No. 4:23-cv-926-ALM (E.D. Tex. Oct. 18, 2023); *see also supra* note 1, at 1 (listing co-pending cases).

in the market in a way that, in other patent cases, might add urgency to case resolution." *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023) ("*Google II*").

Defendant contends that this factor is neutral despite unfavorable court congestion statistics. For example, Defendant concedes that "this District's docket is less congested with 6,470 pending cases as compared to 15,619 cases in the Northern District of California" (Dkt. #23 at p. 19) (citing Dkt. #23-21). Defendant further recognizes that "prospective times to trial between the two districts also slightly weighs against transfer. On average, the median time to trial in the NDCA for civil trials is 48.9 months compared to the Eastern District of Texas's median time of 21.6 months" (Dkt. #23 at p. 19) (citing Dkt. #23-21). Notwithstanding these statistics, Defendant expects this case to exceed the statistical median—of course, by some indeterminable amount of time—because this case has been on file for almost a year and does not yet have a scheduling order (Dkt. #23 at p. 19). By contrast, a schedule has already been entered in the related NDCA case.

Plaintiff focuses its argument on a different cause of court congestion: duplicate proceedings in NDCA. Specifically, Plaintiff argues that this factor weighs against transfer because at least one of the duplicative declaratory judgment actions in NDCA is likely to be transferred here (*See* Dkt. #33-2). Thus, transferring this case while another remains in this district—assuming NDCA does indeed transfer the declaratory judgment action—would increase not only court congestion but also the time to trial, the risk of inconsistent rulings, and the potential for duplicative work. *See Emerging Auto. LLC v. Kia Corp.*, No. 2:23-cv-434-JRG, 2024 WL 3170398, at *13 (E.D. Tex. June 25, 2024) (describing increased court congestion as an "axiomatic" result "not just for the present litigants but for the public at large"). As to the case scheduling order in

the related case, Plaintiff claims that it is effectively moot because the case will likely be transferred to this district (Dkt. #33 at p. 15).

This factor slightly disfavors transfer. While time-to-trial differences and relative docket congestion initially suggest that this factor should weigh against transfer, the Federal Circuit has counseled against drawing such a conclusion when, as here, the patentee "is not engaged in product competition" *Google II*, 58 F.4th at 1383. But as Plaintiff points out, the holding in *Google II* stemmed from *time-to-trial differences* rather than the court congestion argument presented here. *Google II* does not broadly support the proposition that, when one party is a non-practicing entity disengaged from product competition, this factor must either be neutral or favor transfer. *See id.* Instead, *Google II* considered competitive market dynamics as a means to "give some significan[ce] to the time-to-trial difference." *Id.* Similarly, the Federal Circuit concluded in *In re Meta* that the district court erred in finding this factor weighed slightly against transfer because "[t]here [was] no record evidence for the district court's findings that [the non-practicing entity] 'is/was engaged in product competition in the marketplace' against [the appellant] . . . ***giv[ing] some significance to the time to trial difference***[] between districts." *In re Meta Platforms, Inc.*, No. 2023-143, 2023 WL 7118786, at *2 (Fed. Cir. 2023) (emphasis added). This case is distinguishable from Federal Circuit precedent because Plaintiff argues that this factor slightly disfavors transfer on completely independent grounds—the "axiomatic" congestion that this Court, NDCA, and the public at large will suffer from if duplicative proceedings occur in different forums, irrespective of time-to-trial differences (Dkt. #40 at pp. 5–6). *Emerging Auto.*, 2024 WL 3170398, at *13. The Court agrees and finds that this factor slightly disfavors transfer.

16

### B.    The "local interest in having localized interests decided at home" factor favors transfer.

This factor contemplates the "significant connections between a particular venue and the events that gave rise to a suit." *Apple.*, 979 F.3d at 1345 (citations omitted). In evaluating which district has the greater connection to the litigation, courts should disregard interests that "could apply virtually to any judicial district or division in the United States." *Volkswagen II*, 545 F.3d at 317–18.

Defendant asserts that its alleged sale of accused products in this district is insufficient to establish the necessary factual connection between this district and the events giving rise to this suit (Dkt. #23 at p. 18). Plaintiff argues that its "business action" (i.e, filing lawsuits to enforce patent rights in this district) creates a local interest that should be weighed when evaluating this factor (Dkt. #33 at p. 15) (quoting *Digital Broad. Sols., LLC v. DISH Network L.L.C.*, No. 2:22-cv-335-JRG, 2023 WL 11805298, at *8 (E.D. Tex. Jan. 19, 2023)) ("The community where suit is filed and where the population is subject to the use and impact of the Accused Products should be considered even if a defendant does not have its own employees based there.").

This factor favors transfer. Defendant properly notes that, given Mr. Solomon's residence in NDCA, the district "would certainly have an interest in this case because the cause of action 'calls into question the work and reputation of [a person] residing in or near that district'" (Dkt. #23 at p. 18) (quoting *Super Interconnect Techs. v. Google LLC*, No. 6:21-cv-259-ADA, 2021 WL 6015465, at *10 (W.D. Tex. Nov. 8, 2021)) (citations omitted). By contrast, Plaintiff's only alleged factual connection to this forum is that it is based in Austin, Texas—which, again, is not in this district—and that it files suit here. Plaintiff's critical error is that neither speaks to the ***events giving rise to the suit***. *Apple*, 979 F.3d at 1345. Elsewhere, Plaintiff identifies the precise conduct giving

rise to this suit—namely, Defendant's sale of Accused products in this district—but "[t]he Fifth Circuit has unequivocally rejected the argument that citizens of the venue chosen by plaintiff have a 'substantial interest' in adjudicating a case locally because some allegedly infringing products found their way into the Texas market." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009). Granted, the Accused Products did not simply "f[i]nd their way into the Texas market"—Defendant intentionally placed them there when it authorized several Texas dealers to sell its products (*See* Dkt. #23-14) (listing Defendant's authorized dealers in Texas). But the issue is this: none of Defendant's Texas dealers resides in this district. Consequently, NDCA has a stronger local interest in resolving this case than this district. This factor therefore favors transfer.

## C.    The remaining factors are neutral.

The remaining factors uncontested by the parties are neutral: (1) the familiarity of the forum with the governing law; and (2) the avoidance of conflict of law issues (Dkt. #23 at p. 19; Dkt. #33 at p. 15).

After reviewing each factor and accounting for its weight, the Courts finds that Defendant has not met its burden to show that NDCA is "clearly more convenient" than this district. Accordingly, the Court will **DENY** the Motion.

## CONCLUSION

It is therefore **ORDERED** that Defendant Nikon Corporation's Motion to Transfer Venue Pursuant to 28 U.S.C. 1404(a) (Dkt. #23) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 25th day of March, 2025.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE